WELLS BROTHERS CO. OF ILLINOIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WELLS BROTHERS CO. OF NEW YORK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WELLS BROTHERS CONSTRUCTION CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11014, 11015.  Promulgated April 19, 1929.

*William H. Thompson, Esq.*, and *Fred Snell, Esq.*, for the petitioners.

*J. Harry Byrne, Esq.*, for the respondent.

**88**

OPINION.

MARQUETTE: These proceedings present for decision four questions which will be discussed in the following order: (1) Are assessment and collection of the additional tax asserted by the repondent for the years 1917 and 1918 barred by the statute of limitations? (2) Were the petitioners affiliated during the years 1917, 1918, and 1920? (3) and (4) What amount, if any, is the Maine Company entitled to include in its invested capital on account of the contracts and services which it claims it acquired from the Wells in consideration of the issuance of its capital stock? Other issues were raised by the pleadings, but were abandoned by the petitioners.

The evidence herein establishes that the income and profits-tax return of the Illinois Company for the year 1917 was filed on March 29, 1918. The Maine Company filed its income and profits-tax return for 1917 on March 28, 1918, and on May 13, 1919, it filed its return for the year 1918. The five-year statutory period for assessment and collection of any tax due from the Illinois Company for 1917 therefore expired on March 29, 1923, and assessment and collection became barred on that date unless the period was extended by waivers or consents. As to the Maine Company, the statutory periods for collection of any tax due for 1917 and 1918 expired on March 28, 1923, and May 13, 1924, respectively. The statutory time for assessment and collection of taxes for the years mentioned was, however, extended by written waivers or consents entered into by the petitioners and the respondent. It may be observed that the first waiver covering the liability of the Illinois Company for the year 1917 was executed more than five years after the return was filed, and that the second waiver was not made until after the expiration of the first waiver. In the case of the Maine Company, the first waiver for 1917 was executed within the five-year period, but the second waiver was not executed until subsequent to the expiration of the first. In other words, there was as to both companies, a time when the statute of limitations had run against the 1917 taxes. But we find that on December 4, 1925, which was prior to the enactment of the Revenue Act of 1926, both companies and the respondent entered into written waivers or consents for the year in question. In *Joy Floral Co.*, 7 B. T. A. 800, the principle was laid down that

waivers or consents filed subsequent to the expiration of the statutory period for assessment and collection but prior to the Revenue Act of 1926, were valid and operated to extend the period within which assessment and collection of the tax might be made. On appeal to the Court of Appeals of the District of Columbia this decision was reversed, 29 Fed. (2d) 865, apparently upon the ground that the statute did not contemplate a consent after the statutory period had expired. Since the statute related to the remedy and did not attempt to extinguish the liability as did the Revenue Act of 1926, we find no reason to limit the right of the respective parties to consent to a later determination, assessment and collection of the tax to a period prior to the expiration of the period limited by the statute. There is nothing in the evidence herein which indicates that the consents were not freely and fairly made with full knowledge of all the facts, and while we are of opinion that the question of consideration is immaterial, in view of the express authority granted by Congress, if it is material it is to be found in the antecedent liability. We believe this to be in conformity with the rules applied generally to statutes of limitation relating to the remedy as well as to the rule that such statutes are to be construed in favor of the Government. *Loewer Realty Co.* v. *Anderson*, 31 Fed. (2d) 268. In our opinion, the waivers or consents relating to the year 1917 were valid and served to extend the period for assessment and collection of the tax for that year.

As to the year 1918, no extended discussion is necessary. The evidence clearly shows that a written consent to the extension of the period for assessment and collection of the tax for that year was entered into by the Maine Company and the respondent prior to the expiration of the statutory period. Before that waiver expired another was made, and so on until the last waiver was executed on December 4, 1925, and within the period as extended by the waiver of December 4, 1925, the deficiency letter was mailed to the petitioners and an appeal was taken by them to this Board. Assessment and collection of the additional tax for 1918 are, therefore, not barred.

The next question is whether the petitioners were affiliated during the years 1917, 1918, and 1920, and entitled to file consolidated returns of income and invested capital. The petitioners contend that A. E. Wells, F. A. Wells, H. L. Wells, and P. A. Wells, owned or controlled substantially all of the capital stock of the three companies during the years 1917, 1918, and 1920, and that the companies were affiliated within the purview of the revenue acts applicable to those years. The respondent concedes that the Illinois Company and the New York Company were affiliated, but denies that they were affiliated with the Maine Company.

The Revenue Act of 1917 contains no provision relative to affiliation of corporations or the filing by them of consolidated returns. However, provisions for consolidated returns for 1917 were made by section 1331 of the Revenue Act of 1921, which is as follows:

SEC. 1331. (a) That Title II of the Revenue Act of 1917 shall be construed to impose the taxes therein mentioned upon the basis of consolidated returns of net income and invested capital in the case of domestic corporations and domestic partnerships that were affiliated during the calendar year 1917.

(b) For the purpose of this section a corporation or partnership was affiliated with one or more corporations or partnerships (1) when such corporation or partnership owned directly or controlled through closely affiliated interests or by a nominee or nominees all or substantially all the stock of the other or others, or (2) when substantially all the stock of two or more corporations or the business of two or more partnerships was owned by the same interests: *Provided,* That such corporations or partnerships were engaged in the same or a closely related business, or one corporation or partnership bought from or sold to another corporation or partnership products or services at prices above or below the current market, thus effecting an artificial distribution of profits, or one corporation or partnership in any way so arranged its financial relationships with another corporation or partnership as to assign to it a disproportionate share of net income or invested capital. For the purposes of this section, public service corporations which (1) were operated independently, (2) were not physically connected or merged and (3) did not receive special permission to make a consolidated return, shall not be construed to have been affiliated; but a railroad or other public utility which was owned by an industrial corporation and was operated as a plant facility or as an integral part of a group organization of affiliated corporations which were required to file a consolidated return, shall be construed to have been affiliated.

(c) The provisions of this section are declaratory of the provisions of Title II of the Revenue Act of 1917.

It is obvious that the Maine Company was not affiliated with the two other petitioners for the year 1917 under section 1331 (b) (1) of the Revenue Act of 1921, since one corporation neither owned nor controlled any of the capital stock of the other corporations. Nor do we think that they were affiliated within the meaning of section 1331 (b) (2). It will be observed that the section provides that two or more corporations were affiliated in 1917 when substantially all of their stock " was owned by the same interests." The evidence shows that during the year 1917 the Wells family owned only 62.5 per cent of the capital stock of the Maine company which, it may be stated without argument, was not substantially all of the stock of that company. They may have controlled the remaining stock of the company, but they did not own it. It is the province of this Board to construe the law as enacted by Congress, but we can not legislate. The section of law just quoted is clear and unambiguous. It provides for affiliation when substantially all the stock of two corporations is " owned by the same interests," but it does not pro-

vide for affiliation when the stock of two or more corporations is controlled by the same interests. In order to sustain the petitioners' contention that they were affiliated it would be necessary for us to read into the section of the statute just quoted the words "or controlled." This we may not do. The remedy, if any, lies with the legislative branch of the Government, not with this Board. We are of opinion that ownership, not control, is the essential basis of a "Class B" affiliation—which is claimed here—for 1917, and that as substantially all of the stock of the Maine Company was not owned by the same interests that owned the capital stock of the two other petitioners, it was not affiliated with them. *Savannah River Lumber Co. et al.*, 14 B. T. A. 165.

As to the years 1918 and 1920, a different situation exists than obtained in the year 1917. By section 240 (b) of the Revenue Act of 1918 the definition of affiliation is broadened. That section provides:

(b) * * * two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

This Board has frequently held that there is no hard and fast rule as to what constitutes control but that each case must be governed by its own facts and circumstances. *Isse Koch Co.*, 1 B. T. A. 624; *Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Old Colony Railroad Co.*, 1 B. T. A. 1067.

The three petitioners constituted a real and very complete business and economic unit. They were essentially the same business. The Maine Company was organized, not to perform or carry on a different function or business, but to act as a financial shield for the Illinois Company, and for that reason only they had separate structures and separate existence. Due to the exigencies of the situation, that is, to the need which brought the Maine Company into existence, the stockholders were not wholly identical. However, the Wells family, their employees and business friends look upon the petitioners as a business unit, which they constituted in fact. The Maine Company was no more than a branch of the Illinois Company, separately incorporated. The Wells family dominated the affairs of both corporations, conducted the business of both as one enterprise, and ran the corporations as though they owned them in their entirety. Even stockholders' meetings were mere perfunctory affairs carried out by the Wellses. The capital stock of the corporation owned by employees was controlled by the Wellses through written agreements obligating employees to sell their stock to the Wellses upon the termination of their employment. The business associates of the Wellses

and creditors who owned stock in the Maine Company were content that the Wellses should have control, and they constituted a satisfied and quiescent minority. The situation here as to the years 1918 and 1920 is very similar to that found in *Hagerstown Shoe & Legging Co., supra,* and *Harbour-Longmire Co.,* 7 B. T. A. 314, wherein we held that affiliation existed. We are of opinion that the Wells family owned or controlled substantially all of the capital stock of the three petitioners during the years 1918 and 1920, and that they were affiliated and entitled to file consolidated returns of income and invested capital for those years.

The next question is whether the Maine Company may include in its invested capital any amount on account of the Montgomery-Ward buildings contracts mentioned in the findings of fact. It is the contention of the petitioners that these contracts were secured by A. E. Wells, F. A. Wells, and H. L. Wells; that they were worth $53,750, that they were assigned by A. E. Wells, F. A. Wells, and H. L. Wells to the Maine Company in consideration of the issuance to them of $200,000 of the company's capital stock, and that company is entitled to include the contracts in its invested capital at $53,750. The evidence relative to this issue is not as clear as might be desired. It establishes, however, one of two things—either the contracts in question were secured by A E. Wells, F. A. Wells, and H. L. Wells as agents for the Maine Company, or they were secured by A. E. Wells, F. A. Wells, and H. L. Wells for themselves, and were assigned to the Maine Company on March 9, 1917. In either event the Maine Company is not entitled to include in its invested capital any amount or account of these contracts. If the contracts were made by A. E. Wells, F. A. Wells, and H. L. Wells for the Maine Company it was the same as if the Maine Company itself had made the contracts with Montgomery Ward & Co. In that case no one could contend seriously that they could be included in the invested capital of the Maine Company. If the contracts were secured by A. E. Wells, F. A. Wells, and H. L. Wells for themselves and were assigned to the Maine Company by the contract of March 9, 1917, the Maine Company can not include any amount in invested capital on account thereof because of section 331 of the Revenue Act of 1918 which provides:

Sec. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: * * *.

The contracts with Montgomery Ward & Co. cost A. E. Wells, F. A. Wells, and H. L. Wells nothing, and they owned on March 9, 1917, more than 50 per cent of the capital stock of the Maine Company. The situation therefore comes squarely within the inhibition of section 331, *supra*, and the petitioners' claim as to this issue must be denied.

The petitioner, the Maine Company, also claims the right to include in invested capital a certain amount on account of the stock issued to A. E. Wells, F. A. Wells, and H. L. Wells for their services in excess of the amount of money actually paid to them during the years 1917 and 1918. The evidence shows that these three men agreed to work for the Maine Company for the years 1917 and 1918 at salaries which were less than they had received in prior years. The salaries paid were as follows:

| | Paid by Illinois Company | | | Paid by Maine Company | |
| | 1916 | 1917 | 1918 | 1919 | 1920 |
|---|---|---|---|---|---|
| A. E. Wells | $15,000 | $8,400 | $8,400 | $12,000 | $30,000 |
| F. A. Wells | 15,000 | 7,200 | 7,200 | 10,800 | 30,000 |
| H. L. Wells | 6,000 | 5,200 | 5,200 | 7,200 | 20,000 |

The apparent saving in salaries to the Maine Company on account of this contract was $30,400 for the years 1917 and 1918. The petitioners rely upon *Charles P. Limbert Co.*, 9 B. T. A. 1390, to support their claim. In that case Limbert, who was the chief factor in an established manufacturing company, became dissatisfied and decided to go into other work. In order to retain his services the company voted him a large block of stock, he agreeing to remain for ten years and to allow the name of the company to continue unchanged. The Board held that the contract was permanent in character, was worth what the company paid Limbert, and that the amount so paid was properly invested capital—a necessary expenditure to maintain the then status of the company and its business. That case is not controlling here. There is no indication that the Maine Company was obliged to issue stock to the Wellses in order to retain their services. It was not a case where A. E. Wells, F. A. Wells, and H. L. Wells might leave the Maine Company to its detriment, to benefit themselves. They were practically bound to the petitioner. It was their company, organized to save their original corporation from extinction. Every consideration of self-interest would have compelled them to give their services unstintingly to the petitioner, wholly irrespective of the issuance to them of corporate stock. Furthermore,

there is nothing in the record to show that because the Wellses were paid certain salaries prior to 1917 their services were worth the same amount to the new corporation under the circumstances existing in 1917 and 1918. We can see no ground for allowing the petitioners' claim as to this item.

The petitioners' income and profits taxes for the years 1917, 1918, and 1920 should be computed in accordance with this opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

SMITH, dissenting: I dissent from so much of the opinion as holds that a tax due for 1917 is not barred by the statute of limitations. Section 250 (d) of the Revenue Act of 1921 provides that taxes under prior revenue acts:

* * * Shall be determined and assessed within five years after the return was filed, unless both the Commissioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax; and no suit or proceeding from the collection of any such taxes * * * shall be begun, after the expiration of five years after the date when such return was filed, * * *.

In *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346, the court, commenting upon this provision, said:

* * * A reasonable view of the matter is that it was the intention of Congress by the clause here in question to protect taxpayers against any proceeding whatsoever for the collection of tax claims not made and pressed within five years.

The bar of the statute of limitations with respect to the tax due for 1917 had fallen prior to the giving of any consent to a later determination of the tax by the taxpayer. There was no consideration for the giving of the consent, in my opinion. The taxpayer may repudiate the consent.

I entirely agree with the decision of the Court of Appeals of the District of Columbia in *Joy Floral Co.* v. *Commissioner of Internal Revenue*, 29 Fed. (2d) 865, that a waiver of the statute of limitations in order to be effective must be given before the bar of the statute of limitations has fallen. The language of section 250 (d) of the Revenue Act of 1921 requires that construction.

TRUSSELL and LOVE agree with this dissent.

---

MURDOCK: I dissent in so far as affiliation is allowed for the years 1918 and 1920.