ARCADE DEPARTMENT STORE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6298. Promulgated February 14, 1930.

*Harold B. Gilbert, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the respondent.

## OPINION.

LANSDON: The issues involved in this proceeding are fully set forth in our preliminary statement and need not be repeated here. They will be discussed and decided in the order there stated.

When the petitioner began business on August 17, 1918, it took into its asset accounts the estimated value of certain merchandise which it acquired from predecessor concerns in exchange for its stock. At that date all the parties in interest were in agreement as to such value. At some undisclosed date, but prior to December 31, 1918, certain of the prior owners became dissatisfied with the values determined at organization. After some discussion all agreed that the partnership assets and the assets of the individual business were worth, respectively, $10,000 and $500 more than the agreed value at August 17, 1918, and the parties in interest were severally credited on the books of the petitioner with their respective proportionate parts of such alleged additional value. In making its income and profits-tax return for the period in question in the determination of its gross income, the petitioner reduced its closing inventory in the amount it had so credited to prior owners, or $10,500.

It is obvious that the procedure adopted was erroneous. If the assets acquired at August 17, 1918, had the value now alleged, the adjustment should have been made by an addition to the opening inventory of the amount so claimed, and the resulting increase would then have been reflected in increased invested capital and decreased income for the taxable period. The method used disturbed invested capital for the taxable period, and if carried into the opening inventory for 1919, distorted income for that year. It seems, however, that for its opening inventory for 1919, the petitioner carried forward its true closing inventory from the preceding period, and in its income and profits-tax return for such year decreased its closing inventory by $10,500. This erroneous accounting resulted in numerous adjustment problems, all of which are capable of solution if the basis of the changes was correct. The whole matter, therefore, resolves itself into an inquiry as to whether the merchandise which the petitioner acquired for stock at August 17, 1918, had a value of $10,500 in excess of the amounts entered on the books.

At the hearing the petitioner accepted the burden of proof and undertook to show that its opening inventory at August 17, 1918, was understated by the amount of $10,500. The evidence in support of this contention is not persuasive. It is conceded that no physical inventory was made. The amounts entered on the books resulted from an estimate in which all the parties in interest participated and in the result of which all agreed. The verbal agreement as to greater value, subsequently made, also was based on an estimate and is not supported by an actual physical inventory made on cost or cost or market. Upon the record, we are unable to find that the values agreed to at the date of incorporation were erroneous. On this issue the evidence is not sufficient to overcome the presumption that the determination of the respondent is correct. *J. Bach Co.*, 1 B. T. A. 1169.

At date of incorporation the petitioner acquired depreciable assets from prior owners which it entered on its books at a value of $6,814.28. The record does not satisfactorily establish the remaining useful life of the various articles then and so acquired and, consequently, there is no basis upon which we can compute depreciation thereon for the taxable period and year here involved. On the property acquired between August 17, 1918, and January 1, 1919, the petitioner is entitled to deduct depreciation for the year 1919 on the basis of the cost and useful life of the various items as set forth in our findings of fact.

The evidence in support of the petitioner's contention that it is entitled to deduction of $3,000 on account of additional salaries for 1919 is not sufficient to enable us to hold that the respondent erroneously allocated such salary to the taxable period ended December

31, 1918. A similar infirmity in the evidence constrains us to approve the determination of the respondent as to the deduction for bad debts for the year 1919.

On March 18, 1919, the petitioner paid the personal-property tax of the partnership for the year 1918 in the amount of $360.72, and on March 16, 1920, it paid its personal-property tax for the year 1919 in the amount of $1,295.60. It is not disputed that these payments were made on account of taxes for the respective years indicated or that such payments were due sometime in March subsequent to the respective years for which they were levied. It is the contention of the petitioner that the taxes paid in 1919 and 1920 were properly accruable on its books for the years 1918 and 1919, and its income and profits-tax returns having been made on the accrual basis, are proper deductions from its gross income for the respective years in which they were levied.

The laws of the State of Washington provide as to personal-property taxes (1) that the assessment of values shall be made not later than February 1 of each year; (2) that levies of tax on such property shall be made in October of the same year; (3) that the tax rolls shall be delivered to the county treasurer in the next succeeding January; and (4) that, " On and after the first Monday of February succeeding the levying of taxes the county treasurer shall proceed to collect all personal property taxes." Remington's Code and Statutes of the State of Washington, sections 9102, 9213, 9218, and 9223. In the light of our prior decisions the due and payable dates do not determine when such taxes become accruable obligations of the taxpayer. These taxes were levied in October of 1918 and 1919, respectively, and at such dates became obligations of the taxpayer which it was entitled then to accrue on its books as liabilities. The contention of the petitioner on this issue is sustained. *H. H. Brown Co.*, 8 B. T. A. 112; *Crown Williamette Paper Co. et al.*, 14 B. T. A. 133.

The petitioner, in its brief, has abandoned its contention that the statute of limitations had run against the determination, assessment and collection of the deficiency for 1919 at the date when the deficiency notice pertaining thereto was mailed. It still maintains, however, that the determination, assessment and collection of the deficiency for 1918 is barred by such statute. None of the facts relating to the filing of the return or the execution of the consents is in dispute. The petitioner's income and excess-profits-tax return for the period ended December 31, 1918, was filed on May 1, 1919. It is obvious that in the absence of waivers the five-year period of limitations then effective would have run against any additional tax liability determined therefrom at May 1, 1924. On April 11, 1924, a consent was executed which had the effect of extending the statu-

tory period for one year, or until May 1, 1925, at which date the determination, assessment and collection of any additional tax liability was barred, unless the Revenue Act of 1924 or the waiver executed on December 1, 1925, one or the other, or both, operated to further stay the statute.

The issue is governed by the following sections of the Revenue Act of 1918, under which the taxes accrued, and the Revenue Act of 1924, under which the assessment was made. Revenue Act of 1918:

SEC. 250. (d) Except in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made, and no suit or proceeding for the collection of any tax shall be begun after the expiration of five years after the date when the return was due or was made. In the case of such false or fraudulent returns, the amount of tax due may be determined at any time after the return is filed, and the tax may be collected at any time after it becomes due.

Revenue Act of 1924:

SEC. 277. (a) (2) The amount of income, excess-profits, and war-profits taxes imposed by * * * the Revenue Act of 1918, * * * shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

* * * * * * *

SEC. 278. (c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

In the instant proceeding the consent executed on April 11, 1924, extended the time within which determination, assessment and collection might be made until May 1, 1925. The Commissioner failed to move in the matter in any way within the five-year period of limitation or the extension thereof as consented to by the parties. It follows, therefore, under the plain terms of the Revenue Acts of 1918 and 1924, that after May 1, 1925, the respondent was without authority to determine, assess or collect any additional tax liability on account of the petitioner's return for the period ended December 31, 1918, unless the waiver executed on December 1, 1925, reinstated in him the authority which had lapsed at May 1 of that year. Cf. *Russell* v. *United States*, 278 U. S. 181, and *United States* v. *Barth Co.*, 27 Fed. (2d) 782.

The right, if any, of the Commissioner to move after the expiration of the statutory period of limitation is based on section 278·(c) of the Act of 1924, *supra*. The respondent contends that the writing entered into on December 1, 1925, satisfied the terms of that provision, restored his authority to assess, and enlarged the time for the exercise thereof for one year, or more than one year if the petitioner should appeal to the Board.

We are of the opinion that, on the facts, the case at bar is within the rule of *Wells Bros. Co. of Illinois et al.*, 16 B. T. A. 79. We hold, therefore, that the Commissioner under and by virtue of the provisions of section 278 (c), *supra*, and the waiver of December 1, 1925, had authority to determine and assess the tax complained of, at the time of such determination and assessment, and that his acts in respect thereto must be approved. Cf. *Stange* v. *United States*, Court of Claims, decided Nov. 4, 1929.

Reviewed by the Board.

*Decision will be entered under Rule 50.*