G. U. R. Company, Petitioner, *v.* Commissioner of Internal
Revenue, Respondent.

Docket No. 93372.   Promulgated January 30, 1940.

*Harvey W. Peters, Esq.,* for the petitioner.
*F. R. Shearer, Esq., John H. Pigg, Esq.,* and *Jonas M. Smith, Esq.,*
for the respondent.

**224**

OPINION.

OPPER: Respondent seeks to apply to petitioner's income for the year 1934 the following provision of the Revenue Act of 1934:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

The action which respondent asks to have approved involves a loss resulting from the sale of 300 shares of the stock of American Superpower Co. This was sold in 1934 for $263.99, resulting in a deduction on petitioner's return for that year of $7,159.51, being the difference between petitioner's claimed basis of $7,423.50 and the amount received. The stock was transferred to petitioner in 1931 by a corporation wholly owned by petitioner's sole stockholder at the price adopted as its basis by petitioner. The fair market value of the stock at the time of such transfer was $1,068.75, as shown by the stipulated stock exchange figures. It is this amount which respondent seeks to apply as petitioner's basis, thus allocating to petitioner, under section 45, $804.76 of the loss as opposed to the larger figure deducted on petitioner's return, on the ground as contended by re-

spondent that this allocation is necessary in order properly to reflect petitioner's income for the taxable year.

Since the loss in question would serve to reduce petitioner's admitted gross income, there seems little doubt that, if erroneous, its proper adjustment is necessary in order that taxable net income be truly reflected. The question is whether respondent's action in attributing to petitioner only that portion of the loss measured by the difference between the fair market value of the stock when acquired by it and the sale price is so arbitrary, unreasonable, or capricious as to require that it be overruled. *Asiatic Petroleum Co. (Delaware), Ltd.*, 31 B. T. A. 1152, 1157.

We are of the opinion that the present proceeding is controlled by that case and *Welworth Realty Co.*, 40 B. T. A. 97. In *Asiatic Petroleum Co., supra*, the sale to an affiliated foreign corporation was claimed by petitioner to have had the effect of relieving it from payment of tax on the profit. The allocation to it of the entire gain was sustained under section 45. In the opinion the legislative history of the applicable section is carefully detailed. It need not be repeated here. The Board said (pp. 1156, 1159):

* * * The increment in the value of the property was converted into a realized profit within the group. Under these circumstances it was proper to allocate the profit to the domestic corporation which owned the property during the period that the increment occurred.

\*       \*       \*       \*       \*       \*       \*

* * * One of the reasons given as prompting the enactment is the practice of "shifting of profits, the making of fictitious sales." * * * And the sale from petitioner to Bataafsche, even if not open to the charge of "fictitious", clearly was not an arm's length transaction.[1]

On review, 79 Fed. (2d) 234 (C. C. A., 2d Cir.), the court said:

* * * By selling to Bataafsche at cost what it might have sold to Shell Union at a profit, Asiatic avoided the receipt of income * * *. The phrase "evasion of taxes" is broad enough to include the avoidance of the realization for taxation of such a profit through its transfer to another branch of the same business enterprise in a way which only changes its place in the business set up.

It is readily apparent that a slight paraphrase of the quoted language is apposite to the present facts. Here, by buying from its affiliate at an inflated price what it might have bought on the market for a small fraction of the same figure, petitioner avoided, or claims to have avoided, the payment of tax on a part of its true income through offsetting a capital loss largely acquired from its affiliate. It attempted to obtain "the realization for taxation" of such a loss by

---

[1] "* * * The standard to be applied in every case is that of an uncontrolled taxpayer dealing at arm's length with another uncontrolled taxpayer." Regulations 86, Art. 45–1 (6) (b).

transfer to it from "another branch of the same business enterprise in a way which only changed its place in the business set-up."

That this was no arm's length transaction is manifest. Petitioner "paid" $7,423.50 for stock which admittedly it could have purchased on the open market for $1,068.75. It is inconceivable that a purchaser dealing at arm's length would thus have presented his vendor with a seven-fold windfall. It is only the fact that the beneficiary of this openhanded generosity was a member of petitioner's corporate family that reduces the transaction to terms of ordinary or prudent business conduct.

Having thus discarded as the minuend of petitioner's loss computation the inflated figure proposed by petitioner, it became necessary for respondent to substitute one not subject to a similar criticism. This he has, as we think, properly accomplished by attributing to the stock its fair market value at the time it was acquired by petitioner. Similar action in determining and applying the fair rental value of property was approved in *Welworth Realty Co.*, *supra*, p. 101, and use of fair market value by the petitioner resulted in our unwillingness to apply the section in *General Industries Corporation*, 35 B. T. A. 615, and constitutes the distinction between that proceeding and this one.

Petitioner's principal objections to respondent's action are that the section in question confers upon him no power to disallow a deduction completely but only to "distribute, apportion or allocate"; that the acquisition by petitioner having taken place in a prior year, respondent is seeking to apply the section retroactively; that the transaction in question had a legitimate business purpose; and that since a similar result would have been reached by the filing of a consolidated return, section 45 has no application.

The first contention is apparently based upon a misconception, even if it is otherwise sound. Respondent is not seeking to deprive petitioner of the entire deduction but has allocated to it $804.76 of a deduction which petitioner claims to amount to $7,159.51. This is all that the most technical construction of the language could be said to require. The provision refers specifically to the allocation of a deduction, and if this can not be done so as to result in depriving the instant taxpayer of the balance of the deduction not thus allocated, it is difficult to see how the statute could have any practical application in that field.

Nor, in our opinion, is there any retroactive application as a result of respondent's action. The deduction is claimed as of the present year. He is concerned with the present taxpayer. No method suggests itself to us whereby the action he has taken would have been appropriate at any other time than the present. And certainly it

can not be supposed that section 45 loses its effect because the taxpayers upon whom it was designed to operate have divided their transaction so that its various phases cover different taxable periods. So to construe the provision would amount to charting an obvious course for its avoidance and would suggest that in the *Asiatic Petroleum Co.* proceeding a contrary result would have been reached had the foreign affiliate sold the stock in a later year. No such inference can be drawn from that case and the opposite is apparent from its language.

The facts indicate that there may have been, a reasonable business motive for the transfer of the securities from petitioner's affiliate to it. It does not follow, however, that the price attributed to the securities transferred needed to be so widely divergent from their contemporaneous value, nor does any inference from the evidence justify such a finding. For all that appears petitioner could have acquired the securities and could have pledged them as additional collateral without "paying" seven times what they were worth. And we may add that if the result of such a transaction is to distort petitioner's income, it is at least doubtful whether section 45 must fail of application, even assuming the price itself was supportable on some hypothesis. A purpose to evade taxes might evidence the absence of legitimate purpose, *Gregory* v. *Helvering*, 293 U. S. 465; but evasion of taxes is not the sole justification for resort to section 45. *Asiatic Petroleum Co.*, *supra*, p. 1158.

Finally, petitioner's suggestion that a consolidated return might have had the same effect avails it nothing. Not only was the right to file consolidated returns withheld from it in the year before us,[2] although section 45 remained in operation, but the reason for the withdrawal of the privilege was cognate to that upon which section 45 itself is based. Repeal of the consolidated returns provision was the result of an amendment to the 1934 Bill proposed on the floor of the Senate. The Committee Reports are thus irrelevant. The repeal was supported, among others, by Senators Borah, Couzens, and Norris. Their arguments [3] show that the design of the repeal was in part to remove from affiliated organizations, theretofore permitted to consolidate their returns, the opportunity to offset against the actual income of various corporations the losses sustained by others. For example, Senator Borah read from the report of a House Subcommittee: "This is especially true in the depression years, for the effect of the consolidated return is to allow the loss of one corporation to reduce the net income and tax of another, and during a depression more losses occur." [4] Thus petitioner's inability to file

[2] Revenue Act of 1934, sec. 141.
[3] 78 Congressional Record, 6304–6307, 6463–6466, 6555–6561.
[4] 78 Congressional Record, 6557.

a consolidated return with its affiliate, and thereby to obtain the benefit of the latter's loss, was due to one of the identical purposes embodied in section 45,[5] namely, to avoid the transfer of losses so as to offset and thus distort income. We think it is apparent that respondent's action was neither capricious, arbitrary nor unreasonable. It it sustained.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

[5] "Mr. GIFFORD. And this is a new law. What worries us is that any two of these corporations can get together and juggle transactions and take advantage of questionable sales to each other to get deductions. Should it be made possible or at least encourage one corporation to purposely sell to another to show a loss?

"Mr. GREEN OF IOWA. That is stopped by the bill. It is simply a fraud." 69 Congressional Record, 605.