Southern College of Optometry, Inc. v. Commissioner.
Southern College of Optometry, Inc. v. Commissioner
Docket No. 10556.
United States Tax Court
1947 Tax Ct. Memo LEXIS 258; 6 T.C.M. (CCH) 354; T.C.M. (RIA) 47079; March 31, 1947
F. E. Hagler, Esq., and Ed. M. Lowrance, Esq., 2804 Sterick Bldg., Memphis, Tenn., for the petitioner. John R. Stivers, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax, declared value excess-profits tax, and excess-profits tax for the years and in the amounts as follows: Declared Value
Excess-
Excess-
Income
Profits
Profits
Year
Tax
Tax
Tax
1941
$1,518.41
$154.52
$ 237.60
1942
1,068.49
576.12
3,167.00
1943
1,757.04
138.69
The year 1940 is also involved to the extent that petitioner claimed a net loss carry-over in the year 1941. The sole issue is whether respondent erred in reducing the amount of various deductions claimed exclusively by petitioner and in seeking *259 to "allocate" such deductions among corporations controlled by the same interests, under the grant of authority in section 45 of the Internal Revenue Code. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner, a Tennessee corporation, was incorporated on March 3, 1939, for the purpose of conducting a school of optomertry. Its tax returns for the years involved, prepared on a cash receipts and calendar year basis, were filed with the collector's office at Nashville, Tennessee. For a short period prior to 1939, there was an organization in Memphis, Tennessee, known as the Southern College of Optometry, which conducted a school of optometry and as an integral part thereof operated an eye clinic. Upon petitioner's incorporation, it took over the teaching functions; at the same time, by appropriate corporate action, the operation of the clinic was continued as a general welfare corporation under the name of Southern College of Optometry Clinics (hereinafter sometimes referred to as "Clinics"). In 1941 the Southern College (hereinafter sometimes referred to as "Southern") was incorporated *260 as a general welfare corporation to meet the need of providing preprofessional, academic training for students enrolled in classes conducted by petitioner. During each of the years involved Southern enrolled from 25 to 30 students. Petitioner's enrollment during each of the years averaged in excess of 120 students. Respondent has ruled that both Clinics and Southern were tax-exempt organizations. Dr. W. R. Cramer and his wife, Ina Cramer, owned all of petitioner's outstanding stock in the respective proportions of nine-tenths and one-tenth. Cramer was president of each of the three corporations; his wife, secretary-treasurer. The trustees of Clinics were the Cramers, Sam Margolin, Cramer's attorney, Jack Smallridge and L. E. Beatty. The trustees of Southern were the same, except that Dr. Mark T. Crowley, Southern's dean, served in place of Margolin. Cramer's suggestions as to operations were accepted by each of the boards. The salary paid to Cramer by petitioner, as its president for each of the years involved, was: 1940
1941
1942
1943
$8,400
$5,100
$4,800
$4,800
In addition to his salary as president, petitioner paid Cramer a salary for teaching *261 in each of the years involved of $3,600 per annum. Cramer's wife was paid a salary by petitioner as its secretary-treasurer, for each of the years, in the following amounts: 1940
1941
1942
1943
$3,600
$3,600
$ 900
None
Neither was paid any compensation by Clinics or by Southern for any of the years involved. Prior to the organization of petitioner, Cramer rendered services to the Southern College of Optometry, with its integrated clinic, as president and teacher, for which he received a salary of $1,000 monthly. As of January 1, 1940, Clinics discontinued the payment of any salary to him or to his wife. Southern's trustees never fixed any salary for him or his wife. Clinics was directly supervised by Dr. George A. Scott, who was employed as director at a salary of $300 per month by Cramer. Petitioner's senior students assisted him, as did a shop man who was paid a salary of $150 to $175 monthly. Scott reported to Cramer from time to time relative to operation of Clinics and consulted with him on administrative matters and unusual cases. Southern was under the direct supervision of Crowley, its dean, who was paid a salary of $250 monthly. Crowley *262 consulted with Cramer from time to time, regarding expenditures, the hiring of teachers, and their qualifications. All checks issued by Clinics and by Southern were signed by the Cramers. Each of the three corporations occupied space in a building rented by petitioner from Cramer, its owner. The rent was $4,800 annually. The building, a four-story brick structure, has a total of 12,706.92 square feet, of which Southern occupied one room of 254.28 square feet, and Clinics, one-half of one floor, or 1,588.37 square feet. Neither Clinics nor Southern was ever charged with or ever paid any part of the rent; likewise neither was charged with nor paid any part of the insurance paid by petitioner, except that for the year 1941 Clinics * was charged with and paid one-third of the amount of insurance paid by petitioner. The earned insurance premiums, paid by petitioner for the years involved, were as follows: 1940
1941
1942
1943
None
None *
$88.09
$248.65
Each of the three corporations maintains a separate bank account, and has a separate set of books, kept by a part-time bookkeeper, who received a salary therefor *263 from each of the three. Of the salaries paid to the Cramers for the years 1940 and 1941, respondent has allocated to Clinics one-fourth; of the salaries paid to them in 1942, he has allocated one-fourth to Clinics and one-fourth to Southern; and of the salary paid to Cramer in 1943, he has allocated one-fourth to Clinics and one-fourth to Southern. He has, likewise, allocated one-fourth of the rent paid on the building in 1940 and 1941 to Clinics; and, for the years 1942 and 1943, he has allocated one-fourth of the rent to Clinics and one-fourth to Southern. For the years 1942 and 1943, he has allocated one-third of the earned insurance paid by petitioner to Clinics and one-third to Southern. In the statement attached to the notice of deficiency respondent asserted: It has been determined that an apportionment of deductions among organizations controlled by the same interests as you is necessary in order to clearly reflect your income. Such apportionment is authorized by Section 45 of the Internal Revenue Code. A fuller explanation of respondent's action appears in the revenue agent's report, in which it is stated in part: The principal cause for the *264 deficiency as reflected herein is due to the allocation of officers salaries, rent, and insurance between the taxpayer, the Southern College and Southern College of Optometry Clinics all of which are so closely connected and affiliated that actual determination of expenses applicable to each is impractical. * * *
Regardless of the intent and purpose of the interlocking interests, the result is that by burdening the taxpayer corporation with all of the administrative expenses of the two tax exempt corporation has grossly understated the net income of the taxable corporation and invokes the application of Section 45 of the Internal Revenue Code which provides the Commissioner with discretion in allocating expenses in such a manner as will reflect the true taxable net income of the taxable corporation, therefore allocation has been herein made as most nearly reflects the correct taxable net income as disclosed from available facts. For 1940 and 1941 there was expended on behalf of petitioner 11,119 / 12,707 of the total rent payment; for 1942 and 1943, 10,864 / 12,707 thereof. Of the total salary paid to petitioner's secretary-treasurer, three-fourths *265 was paid for services rendered to it for the years 1940 and 1941, and one-half thereof for the year 1942. Of the salary paid to Cramer as president, three-fourths was paid for services rendered to petitioner for the years 1940 and 1941, and one-half thereof for the years 1942 and 1943. All of the salary paid him as a teacher was for services rendered to petitioner. Of the insurance one-third was paid for the protection of petitioner. Opinion The principal attack upon respondent's action under section 45, Internal Revenue Code[1] appears to be the extent of its use. Petitioner shows with a considerable degree of success that respondent's allocation of the deduction for rent as between petitioner and its commonly-controlled exempt affiliates bears no relation to the distribution of the benefits of the space actually occupied by the respective organizations. The same applies in a more modified degree to the allocation of salaries. *266 The facts show that the one affiliate occupied one-eighth of the total space and the other a mere one-fiftieth. But to the two combined respondent allocated one-half of the total rent paid. [2] This action seems to us arbitrary and without adequate foundation, and, to the extent that it is excessive, it should be disapproved. The conclusion, as appears from our findings, is that the rental deduction should be allocated in accordance with the space used by the respective participants in the premises and that petitioner should be permitted to retain 85 1/2 percent (or more) of the rent deduction. *267 In the case of salaries, it is demonstrated by the record that payments were made for two types of services. The work performed by petitioner's president as an instructor is not the proper subject of allocation since services of that nature were rendered exclusively to petitioner. It may be, in addition, that petitioner's officers rendered more valuable services to it than to the affiliates, but the facts supply no basis for allocation which is more accurate than the division employed by respondent. We have accordingly concluded that petitioner should not be deprived of any part of the deduction for the teaching salary, but that it is entitled to only the allotted part [2] of the salaries of the officers as determined by respondent. *268 There is a third item of allocation dealing with a deduction for insurance premiums. It is not possible to say that any other allocation than that proposed by respondent would be more accurate and since, as petitioner suggests in its brief, the amount "is too immaterial * * * to merit more than passing notice," respondent's action in this respect has been permitted to remain undisturbed. In addition to its resistance to the Commissioner's method of allocation petitioner also insists that section 45 under which respondent purported to act is inapplicable. In this we are unable to concur. This is not a case of attributing "income where none existed," as in Tennessee- Arkansas Gravel Co. v. Commissioner (C.C.A., 6th Cir.), 112 Fed. (2d) 508. This proceeding involves only deductions. And it is an instance, not of disallowance, but of true allocation. Cf. General Industries Corp., 35 B.T.A. 615. The present petitioner seeks to deduct from its admitted gross income amounts which it claims as payments for rent, salaries, and insurance. As to these claimed deductions, respondent has allocated a part to petitioner and a part away from petitioner and to its affiliated *269 organizations. That the latter are not before us is immaterial. As we said in G.U.R. Co., 41 B.T.A. 223, 226, affirmed (C.C.A., 7th Cir.), 117 Fed. (2d) 187: The provision, refers specifically to the allocation of a deduction, and if this cannot be done so as to result in depriving the instant taxpayer of the balance of the deduction not thus allocated, it is difficult to see how the statute could have any practical application in that field. As in that case "this is all that the most technical construction of the language could be said to require." Nor is the fact that petitioner's two affiliates were tax-exempt organizations sufficient to eliminate the operation of section 45. Respondent's regulations have from the beginning interpreted the word "organizations," as used in that section, to apply "regardless of * * * whether exempt * * *." Regulations 86, article 45-1 (a) (1); Regulations 111, section 29.45-1 (a) (1). The section has been repeatedly reenacted without change since 1934 when this provision of the regulations first appeared. See Hugh Smith, Inc., 8 T.C. 660 (March 28, 1947). It is a reasonable interpretation of the statute *270 and should be given effect. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110. To the extent which we have indicated, we regard respondent's action as appropriate to carry out his duty of seeing that petitioner's income is properly reflected. To that extent only, the deficiency is approved. Decision will be entered under Rule 50. Footnotes
*. So in stipulation of facts.↩
1. SEC. 45. Allocation of Income and Deductions. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, approtionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩
2. Allocations vary among the several years depending on the assumption of the existence of one affiliate or two. The Revenue agent's report stated: "In the fall of 1941, it was concluded by its [petitioner's] officers that a preparatory College, to qualify students lacking in the required credits for the School of Optometry, operated in conjunction with the School and Clinic would be a considerable advantage to both the School of Optometry and the Clinic, therefore another exempt corporation was formed and chartered under the laws of the State of Tennessee as were the two existing corporations. This college also maintained its quarters in the same building with the Clinic and Optometry School and its principal offices were maintained by the same officers and personnel to a substantial degree. No portion of these expenses were borne by the preparatory college."↩
2. Allocations vary among the several years depending on the assumption of the existence of one affiliate or two. The Revenue agent's report stated: "In the fall of 1941, it was concluded by its [petitioner's] officers that a preparatory College, to qualify students lacking in the required credits for the School of Optometry, operated in conjunction with the School and Clinic would be a considerable advantage to both the School of Optometry and the Clinic, therefore another exempt corporation was formed and chartered under the laws of the State of Tennessee as were the two existing corporations. This college also maintained its quarters in the same building with the Clinic and Optometry School and its principal offices were maintained by the same officers and personnel to a substantial degree. No portion of these expenses were borne by the preparatory college."↩